(97 Misc. Rep. 156)

### In re UNION ST. IN CITY OF NEW YORK.

(Supreme Court, Special Term, Kings County. October 16, 1916.)

EMINENT DOMAIN ⬤⟹230—COMMISSIONER IN STREET OPENING PROCEEDINGS— FEE OF DECEASED COMMISSIONER.

Under Charter of City of New York (Laws 1901, c. 466) § 998, providing for the fees of a commissioner of estimate in street opening proceedings, where a commissioner took an active part in reference to the proof of titles of claimants and on the question of values, up to the time of his death, before the final report was made and none of the work done during his life was gone over anew, and the commissioner succeeding him received a much smaller amount as compensation than the other commissioners, the city is liable to the estate of the deceased commissioner upon the theory of quantum meruit for the work actually performed.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 584; Dec. Dig. ⬤⟹230.]

Application by the City of New York for the purpose of taxing costs in a street opening proceeding, in which question involved was the fees due the estate of a deceased commissioner of estimate. Judgment allowing and fixing the fees due the deceased commissioner.

Peter P. Smith, of Brooklyn, for Estate of John J. Brennan.
Lamar Hardy, Corp. Counsel, of New York City.

MANNING, J. This application is made for the purpose of taxing the costs in a street opening proceeding, and the only question involved concerns the liability of the city for certain fees claimed to be due the estate of one of the commissioners who died before the final report in the matter was made. It appears that one John J. Brennan was duly appointed a commissioner of estimate on the 8th day of February, 1912; that he qualified and thereafter acted in such capacity up to the time of his death, which occurred in the latter part of December, 1914. During the time between his appointment and his death, it is admitted and certified to by the corporation counsel the deceased commissioner actually and necessarily rendered services in the proceeding. Such services consisted in attending 94 · meetings, at which the time actually and necessarily spent exceeded one hour each, and 12 meetings at which the time actually and necessarily spent did not exceed one hour. During these hearings a large amount of tes-

---

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

timony was taken. The property was viewed, and the deceased commissioner appears to have taken a very active part in reference to the proof of title of the claimants, and also on the question of values. It further appears that after his death the evidence adduced during his lifetime was made use of by the other commissioners in making up their report, and no claim is made by the city that the matter had to be gone over anew. In fact, the city is not called upon, as appears by the certificate of the corporation counsel, to pay the deceased commissioner's successor any fees or charges for the work done or the time spent by Commissioner Brennan during his lifetime. This is further evidenced by the bills of the commissioners now presented for taxation; for instance, the fees of Commissioner Blanchfield are set forth as amounting to $1,230, those of Commissioner Hirshfield, $1,250, while the fees of Commissioner Eckstein, the man who was appointed to succeed Commissioner Brennan, are given as only $300. Most of the work including the making of a preliminary report, and also the vesting of title to various parcels of property, had been completed when Mr. Brennan died. Prior to his death, he had faithfully performed his duties in conjunction with the other commissioners, and it is only fair to assume that these commissioners, and also the city, received and enjoyed the benefit and value of his industry and experience. He did not resign his place, nor is he charged with abandoning his work. All that can be said is that the hand of death fell upon him before he could complete his labors, and so the question is, in such a case, shall the city profit by his work and escape paying what his services are reasonably worth.

To refuse payment in such a case seems to me to be neither just, fair, or equitable, and to uphold nonpayment upon technical grounds would be straining the law to the breaking point. In fairness to the city and the corporation counsel, it appears that no strenuous opposition is made to the payment of the bill; but it is claimed by the corporation counsel that in view of a prior decision by one of the justices of this court in the Matter of the New York Municipal Railway, published in the New York Law Journal, May 16, 1916, the services of the commissioner cannot be paid either upon a per diem basis or upon a quantum meruit. Mr. Justice Benedict in this case said:

"No allowance should be made for the services of a deceased commissioner. The office of commissioner is similar to that of a referee (Matter of City of New York, 140 App. Div. 203, 124 N. Y. Supp. 1053), and the estate of a deceased referee has been held not to be entitled to his fees where he died before rendering his report. Hebard v. City of New York, 137 App. Div. 752, 122 N. Y. Supp. 628."

While I recognize the force of the above decision and the cases therein cited as applying to the facts in that case, they are not decisive and controlling upon the facts as presented in the present application. As I read the case of the Matter of City of New York (Valley Stream, 140 App. Div. 203, 124 N. Y. Supp. 1053), it concerned an application by the commissioners to receive an award before the completion of the proceeding for services rendered to a certain date, and it was held that the court was without power to make such an award prior

to the completion of the work and confirmation of the report. The Hebard Case only decided that the fees of a sole referee who died before signing his report could not be taxed. No criticism can be made upon this reasoning, for, of course, the death of a sole referee before the conclusion of his report necessitates the appointment of a new referee and a trial of the matter de novo. The cases above referred to are not analogous to the present one, and in my opinion are easily distinguished therefrom.

Section 998 of the Charter provides for costs of commissioners and fixes their compensation as follows:

"Each of the commissioners of estimate shall receive $10 for each day upon which he attends a meeting of the said commissioners and is actually and necessarily employed in * * * performance of the duties imposed upon them by this act, at the offices provided for said commissioners by the bureau of street openings in the law department, or at a meeting of the commissioners to view the premises provided the time necessarily required and actually spent at such meeting exceeds one hour. * * * Such costs, fees and expenses or disbursements, which by law are required to be taxed as in this chapter provided, shall be stated in detail in the bill of costs and charges and expenses, and shall be accompanied by such proof of the reasonableness and necessity thereof, as is now required by law and the practice of the said court upon taxation of costs and disbursements in other special proceedings or actions in said court."

I see nothing in either of these provisions which precludes the court from entertaining an application for an allowance to a commissioner who has substantially completed his labors, as is the case now before the court, and in my opinion it would be in furtherance of justice and fair dealing to compensate the estate of Commissioner Brennan upon the theory of quantum meruit for the work which it is admitted he faithfully performed.

Considering the fees of the other commissioners, as presented to be taxed, I am inclined to hold that a just and fair amount to be fixed as the fees due to the deceased commissioner is the sum of $900, and this amount is, accordingly, allowed and directed to be taxed.